# United States Court of Appeals for the Federal Circuit

2009-7015

FRANCIS M. JACKSON,

Claimant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.


Kenneth M. Carpenter, Carpenter, Chartered, of Topeka, Kansas, argued for claimant-appellant.

Lauren A. Weeman, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. On the brief were Michael F. Hertz, Deputy Assistant Attorney General, Jeanne E. Davidson, Director, Kirk T. Manhardt, Assistant Director, and Scott D. Austin, Senior Trial Attorney. Of counsel on the brief were David R. McLenachen, Deputy Assistant General Counsel, and Amanda R. Blackmon, Attorney, Office of the General Counsel, United States Department of Veterans Affairs, of Washington, DC.

Appealed from: United States Court of Appeals for Veterans Claims

Judge Robert N. Davis

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

2009-7015

FRANCIS M. JACKSON,

Claimant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.

Appeal from the United States Court of Appeals for Veterans Claims in 06-0823, Judge Robert N. Davis.

_____

DECIDED:  November 25, 2009

_____

Before RADER, BRYSON, and LINN, <u>Circuit Judges</u>.

RADER, <u>Circuit Judge</u>.

The United States Court of Appeals for Veterans Claims (the "Veterans Court") held that attorney Francis M. Jackson was not entitled to fees for his representation of veteran Gerald Easler in connection with a service disability claim, which ultimately included a total disability rating based on individual unemployability ("TDIU").  Because Mr. Easler's claim did not include the requisite evidence to support a TDIU claim before the Board of Veterans Appeals (the "Board"), Mr. Easler's claim was not a part of the "case" as defined in 38 U.S.C. § 5904(c).  For that reason, Mr. Jackson does not qualify for fees and this court therefore affirms.

I.

In January 2000, a Department of Veterans Affairs regional office (the "RO") granted Mr. Easler an increased rating from twenty to forty percent for his lower back disorder. Mr. Easler then filed a supplementary claim seeking an increased rating on his lower back disorder and a new disability rating for a cervical spine disorder. The Board rejected both requests in July 2000.

Mr. Easler then hired Mr. Jackson on a contingency fee basis to prosecute his appeal to the Veterans Court. Under that contingency fee agreement, Mr. Jackson would receive a fee of twenty percent of "the total amount of any past-due benefits awarded on the basis of [Mr. Easler's] claim before [the Veterans Administration (the 'VA')]." The VA would pay Mr. Jackson directly from the benefits recovered by Mr. Easler.

Mr. Jackson then filed an appeal to the Veterans Court on Mr. Easler's behalf. The Veterans Court shortly thereafter granted a joint motion to vacate the Board's opinion and remand. During the ensuing proceedings, Mr. Easler and Mr. Jackson entered into a second contingency fee agreement covering all future representations before the Veterans Court and subsequent remands to the Board and RO. The second agreement also provided for an automatic deduction of Mr. Jackson's fee from any past-due benefits recovered by Mr. Easler.

On a subsequent remand to the RO, Mr. Easler filed a separate claim for depressive disorder. The RO eventually granted that claim assigning a thirty percent disability rating. Mr. Jackson then contacted the RO to inquire about Mr. Easler's prospect of qualifying for TDIU benefits as a result of this depressive disorder and its

accompanying disability rating.  The RO adopted Mr. Jackson's suggestion and granted TDIU.

Under Mr. Jackson's contingency fee agreements, the VA withheld $7,412.95—twenty percent of the past-due benefits collected—from Mr. Easler.  But before disbursal of that amount, the VA informed Mr. Jackson that he was not eligible to receive any past-due benefits relating to TDIU because that issue had not been the subject of a final Board decision per 38 U.S.C. § 5904(c).  Mr. Jackson appealed to the Board, which affirmed the RO's decision:

> In this case, there has been no final Board decision on the issue for which the appellant seeks payment, i.e., entitlement to a TDIU.  The Board's decision of July 2000 addressed the veteran's appeal on the issues of service connection for a cervical spine disorder and increased ratings for a low back disability.

The Board also noted that "the evidence of record [did] not support a finding of unemployability"—a necessary element of TDIU—at the time of the Board's July 2000 decision.

On appeal to the Veterans Court, Mr. Jackson argued that he had presented Mr. Easler's TDIU claim to the Board prior to the July 2000 decision because it was reasonably and inherently related to Mr. Easler's increased rating claim for lower back disorder.  The Veterans Court rejected that argument:

> To raise an informal TDIU-rating claim, the veteran must make a claim for the highest rating possible, submit evidence of medical disability, and submit evidence of unemployability.  The Court concludes that although the veteran made a claim for the highest rating possible and submitted evidence of a medical disability, he did not submit evidence of unemployability. . . . Here, evidence does not suggest the veteran was unemployable.  Indeed, it suggests the opposite.

After the Veterans Court denied a subsequent motion for reconsideration, Mr. Jackson timely appealed.

## II.

This court's jurisdiction to review decisions of the Veterans Court is limited. This court may only review questions relating to the interpretation of constitutional and statutory provisions. 38 U.S.C. § 7292(c). This court has no jurisdiction to review questions of fact, or the application of law to a particular set of facts, unless a constitutional issue is presented. Id. § 7292(d)(2).

Section 5904(c) provides in pertinent part:

> [A] fee may not be charged, allowed, or paid for services of agents and attorneys with respect to services <u>provided before the date</u> on which the Board of Veterans' Appeals <u>first makes a final decision in the case</u>. Such a fee may be charged, allowed, or paid in the case of services provided after such date only if an agent or attorney is retained with respect to such case before the end of the one-year period beginning on that date.

38 U.S.C. § 5904(c)(1) (2000) (emphasis added). This court has explained that a "case" within the meaning of Section 5904(c) encompasses "all potential claims <u>raised by the evidence</u>, applying all relevant laws and regulations, regardless of whether the claim is specifically labeled . . . ." <u>Roberson v. Principi</u>, 251 F.3d 1378, 1384 (Fed. Cir. 2001) (emphasis added). In that vein, this court has repeatedly endorsed liberal and broad constructions of veterans' claims. <u>See, e.g.</u>, <u>Gambill v. Shinseki</u>, 576 F.3d 1307, 1316 (Fed. Cir. 2009) ("Like the regional office, the Board is required to construe all of the veteran's arguments in a liberal manner." (citations and internal quotation marks omitted)). Indeed, 38 C.F.R. § 20.202 expressly requires the Board to construe an appellant's arguments "in a liberal manner for purposes of determining whether they raise issues on appeal."

This case asks whether Mr. Jackson presented a TDIU claim as part of Mr. Easler's "case" for purposes of Section 5904(c) at the time of the Board's July 2000 decision. If TDIU was a part of Mr. Easler's case, then Mr. Jackson is entitled to attorney's fees related to the payment of TDIU benefits. If it was not, the Board had yet to make "a final decision" on the matter and Mr. Jackson has no entitlement to attorney's fees.

Before the Veterans Court and on appeal to this court, Mr. Jackson acknowledges that Mr. Easler did not expressly raise a claim for TDIU. Nonetheless, according to Mr. Jackson, a TDIU claim was encompassed by or inherent in the original two claims presented to the Board before the July 2000 decision. In other words, Mr. Jackson contends that a TDIU claim is implicitly raised before the Board where a veteran seeks an increased rating based on either a previous service connection injury or a new disability claim.

While this court accepts that a TDIU claim may under certain circumstances necessarily be encompassed in a veteran's claim for increased benefits despite not being expressly raised, those circumstances are absent here. To raise an informal TDIU claim, a veteran must make a claim for the highest rating possible, submit evidence of medical disability, and submit evidence of unemployability. See Roberson, 251 F.3d at 1384 ("Once a veteran submits evidence of a medical disability and makes a claim for the highest rating possible, and additionally submits evidence of unemployability, the 'identify the benefit sought' requirement of 38 C.F.R. § 3.155(a) is met and the VA must consider TDIU."). In this case, as the Board determined before the July 2000 ruling, Mr. Easler's claim included no evidence of unemployability.

Indeed, as the Veterans Court explained, the evidence on record "suggest[ed] the opposite"—i.e., that Mr. Easler was employed. This court may not review that factual finding. 38 U.S.C. § 7292(d)(2). Without any modicum of evidence suggesting Mr. Easler's unemployability, and with the record suggesting the opposite, this court cannot say that TDIU was part of the "case" before the Board's July 2000 decision. Thus, the Board was entirely correct to refuse to disburse the attorney's fees to Mr. Jackson, but instead to send the full amount to the veteran.

The decisions relied on by Mr. Jackson do not support his argument. In Stanley v. Principi, 283 F.3d 1350, 1352 (Fed. Cir. 2002), the RO denied the veteran's claim for service connection of a cervical spine disability. The veteran did not appeal, resulting in a final decision. Id. The RO then denied the veteran's application to reopen the claim without the submission of new and material evidence. Id. The veteran then hired an attorney, Mr. James Stanley, to prosecute his claims on a contingency fee basis. Id. at 1353. On appeal, the Board vacated its finding because new and material evidence had been submitted by the veteran. Id. In its decision, the Board did not address TDIU. Id. The Board then remanded to the RO where the veteran added a claim for TDIU. Id. The RO eventually granted the veteran's claim for service connection and his accompanying claim for TDIU benefits. Id. The Veterans Court, nonetheless, denied Mr. Stanley any attorney's fees finding that no "final decision" had been issued by the Board on either the cervical spine or TDIU claims. Id.

This court vacated because: "attorneys' fees are available in connection with the proceedings associated with reopening a claim after the Board first makes a final decision with respect to a particular issue in the reopening proceedings, even if the

decision is not appealable." Id. at 1359. Despite Stanley's reference to the broad implications behind Section 5904(c), the decision was limited to only the cervical spine claim. It did not include the claim for TDIU benefits. As to that issue, this court expressly found no entitlement to attorney's fees because it had not been properly raised by the veteran prior to the appeal to the Board. Id. This case presents facts similar to the TDIU claim in Stanley. No doubt, the TDIU claim in Stanley, as here, was directly related to and stemmed from the veteran's service connection claim. Notwithstanding that fact, Mr. Stanley, like Mr. Jackson, was not entitled to attorney's fees.

In Carpenter v. Nicholson, 452 F.3d 1379, 1380 (Fed. Cir. 2006), the veteran originally received a one hundred percent disability rating, which was later reduced by the RO to sixty percent. The veteran then twice brought claims to adjust his disability rating back to one hundred percent. Id. Both claims were denied by the Board. Id. Kenneth Carpenter was then hired as counsel. Id. at 1381. On appeal to the Veterans Court, the case was remanded for error based on a joint motion filed by the parties. Id. Mr. Carpenter's efforts on remand were successful and the veteran was again awarded a one hundred percent disability rating. Id. The veteran then brought a separate claim seeking an earlier effective date on the ground that the earlier RO decision contained clear and unmistakable error. Id. The RO denied that claim, but on appeal the Board reversed and granted the veteran his requested effective date. Id. Despite his efforts, the Board informed Mr. Carpenter that he was not entitled to attorney's fees for services rendered relating to the earlier effective date because "no final decision" had been made by the Board on that issue. Id. at 1382.

In reversing the Board's decision, this court found that the Board had already squarely decided the question of effective date because it was necessarily encompassed in the veteran's service connection claim. Id. at 1384. In other words, because proving an effective date is a necessary component of establishing a disability rating, the effective date of disability was an issue presented in the "case" when the Board considered the overall question of disability. Unlike Carpenter, however, establishing entitlement to TDIU is not a prerequisite to obtaining an increased disability rating. Significantly, there is an essential element of TDIU setting it separate and apart. That element is unemployability—the very element that Mr. Easler's claim lacked.

Last, in Comer v. Peake, 552 F.3d 1362, 1367 (Fed. Cir. 2009), this court held that "a claim to TDIU benefits is not a free-standing claim that must be pled with specificity." But, as further clarification, this court went on to explain that it could only be implicitly raised where "a pro se veteran, who presents cogent evidence of unemployability, seeks to obtain a higher disability rating." Id. (emphasis added). Similarly, in Roberson v. Principi, 251 F.3d 1378, 1384 (Fed. Cir. 2001), a decision heavily cited in Comer, this court further instructed the VA to consider any implicit TDIU claim but only where the veteran "submits evidence of unemployability." Together, Comer and Roberson make clear that a claim for TDIU can be implicitly raised only where the veteran proffers some evidence of unemployability. The record in this case contains no such evidence before the Board's July 2000 decision. As such, TDIU was not a part of the "case" as required by Section 5904(c).

III.

For the above-stated reasons, the decision of the Veterans Court to deny Mr. Jackson attorney's fees in connection with Mr. Easler's TDIU claim is affirmed. Because no evidence of Mr. Easler's unemployability was submitted before the Board's July 2000 decision, the "case" before the Board at that time did not include a claim for TDIU benefits and thus was not a compensable fee under Section 5904(c).

<u>AFFIRMED</u>

<u>COSTS</u>

Each party shall bear its own costs.